## TERRE HAUTE, INDIANAPOLIS AND EASTERN TRACTION COMPANY *v.* FERRELL.

[No. 13,121. Filed December 21, 1928. Rehearing denied February 23, 1929. Transfer denied January 10, 1933.]

*A. W. Knight* and *Beasley, Aikman, O'Brien & Beasley,* for appellant.

*Rawley, Beaumunk & Fisher, George W. Wells* and *John O. Piety,* for appellee.

NICHOLS, J.—Action to recover damages on account of the wrongful death of appellee's decedent by reason of alleged negligence on the part of appellant in running one of its interurban cars against an automobile in which said decedent was riding. A trial by jury was had, resulting in a verdict in favor of appellee on which judgment was rendered in appellee's favor for $5,000, from which this appeal.

The errors relied on for reversal are that the court erred in overruling appellant's motion to require appellee to make her complaint more specific; in overruling appellant's demurrer to the complaint; and in overruling appellant's motion for a new trial.

It is averred in the complaint, in substance and so far as here involved, that appellant's right of way and track, commencing at the west corporate limits of the City of Brazil and extending west for more than four miles, is located on the south side of and contiguous to a public highway known as the National Road, which

leads west, extending from said City to Terre Haute; that said National Road between said cities is paved with concrete about 16 feet in width; that appellant's right of way is intersected by numerous public highways and private crossings, one of which private crossings was located about three miles west of Brazil and known as Lowe Crossing, which crossing led from the pavement of said public highway to the south to a distance of about 18 feet from the pavement, across appellant's tracks, then up a grade and into the premises of one Jess Lowe; that said private crossing was installed and maintained by appellant for more than four years prior to November 4, 1924, and was constructed by means of boards about 12 inches wide on each side of the rails with a space on each side and between the rails filled in with gravel and cinders; that during all of said time said private crossing had been used continuously by people residing on the Lowe premises and by the public in general desiring to go to said Lowe premises; that on account of its close proximity to said pavement, its apparent construction and use it served as an allurement, inducement and invitation for all persons to cross appellant's track; that a short time before said date appellant raised the rails, ties and boards at said crossing more than six inches, and filled in the space between the tracks with loose gravel and cinders, and likewise placed loose earth, cinders and gravel on the outside of said track, and after such repairs were so made they greatly obstructed and interfered with vehicles and automobiles passing over said crossing, and caused such vehicles and automobiles to stall on the crossing, killing the engines attempting to cross over the same, all of which made it very dangerous and hazardous to persons crossing over said crossing in vehicles and automobiles; that for a long time prior to November 12, 1924, appellant had established the custom of

blowing the whistles of its cars as they approached the crossing, thereby giving persons using it warning of the approach of cars; that about 1,300 feet east of said crossing a public highway leads from said National Road across appellant's tracks to the south; that commencing at said public highway leading to the south, and continuing west for a distance of 700 feet, appellant's track was upgrade to such an extent that the headlight of its cars, west bound, would not show along the track beyond the top of the hill; that at a point 700 feet west of said highway appellant's tracks slightly curved to the northwest, and from said point said track led downgrade for a distance of about 250 feet, at which point it curved again to the northwest and led upgrade for a distance of 250 feet to said private crossing; that up to the point of said last mentioned curve the headlights of cars west bound were thrown to the south of the tracks and would not extend along the tracks towards said private driveway, but would be thrown about 75 feet to the south thereof; that on account of said hill and curves in appellant's track as aforesaid it was very dangerous to persons using said crossing to run an interurban car as it approached said private crossing at a high rate of speed, and without giving some signal or warning.

That on November 12, 1924, about seven o'clock p.m., appellee's decedent, in company with three companions, traveled from Brazil along said National Road intending to go to the Lowe premises; they traveled in a car which was not being driven by appellee's decedent, but who was sitting in the front seat of said automobile; that when they reached said crossing they turned to cross over the tracks on said private crossing to go into the Lowe premises, and, on account of the negligence of appellant in the defective and improper repairs and maintenance of said crossing, said automobile was

stalled on said track with its headlights burning, whereupon appellant, by its servants in charge of one of its cars, negligently ran such car from the east over said private crossing for a distance of 400 feet at a high and dangerous rate of speed of 35 to 45 miles per hour and struck said automobile, which resulted in the death of appellee's decedent and all of his companions but a few minutes after they were struck; that appellant, by its servants in charge of said car, negligently ran said car across said public highway leading south across its track without blowing its whistle or giving any warning of its approach thereto, and negligently failed to blow its whistle or give any warning of its approach to said private crossing.

That the persons in charge of said car that struck appellee's decedent when said car was more than 250 feet east of said crossing saw the automobile, in which such decedent was riding, stopped on the track at such private crossing, and knew that to continue on would greatly jeopardize the lives of the persons in said automobile; that after seeing said automobile so stopped appellant's servants negligently failed and omitted to stop or check the speed of said car, which, by the exercise of ordinary care, could have been done and serious injury to appellee's decedent and his companions avoided.

That appellant negligently failed to maintain said private crossing in a reasonably safe condition for persons to pass over, and negligently, a short time before the accident, raised the track, ties and boards of said crossing about six inches so that vehicles and automobiles could not pass over the track with reasonable safety, but would stall on the track and kill the engines; and on account of said condition the automobile in which such decedent was riding was stalled thereon, and he was struck and killed.

That when said interurban car was more than 600 feet east of said private crossing, appellant's servants in charge of said interurban car saw the automobile in which appellee's decedent was riding turn from said National Road and toward said private crossing, and said servants then knew that said private crossing had recently been repaired and raised, making it difficult for automobiles to pass over the same, and that automobiles were apt to get stuck on said crossing, but notwithstanding such knowledge such servants negligently ran said car from said point, 600 feet east of said private crossing, at a high and dangerous rate of speed over said private crossing and 400 feet west thereof before it was stopped, and thereby struck and killed such decedent.

That while appellee's decedent was in said automobile on said private crossing appellant, by its servants in charge of said interurban car, negligently ran said car against such decedent and killed him.

That the aforesaid negligent acts of appellant were the sole proximate cause of appellee's decedent being struck and killed as aforesaid.

Appellee demands judgment for $10,000.

As it seems to the court the complaint, taken as a whole, is sufficiently specific to apprise appellant of the ground upon which recovery is sought, and we hold, therefore, that there was no error in overruling appellant's motion to make it more specific.

Appellant forcefully contends that the complaint was insufficient as against his demurrer for the reason that it appears by the averments of the complaint that appellant's decedent was but a mere licensee to whom appellant owed no duty except not wilfully to injure him. It appears therein that the crossing had been constructed by appellant, and that appellant had maintained it for several years up to the

time of the accident, and that it was used not only by the owners of the premises to which it was an approach, but generally by others who for any reason desired to go onto such premises. If it were to be conceded that the complaint with these averments is insufficient as against appellant's demurrer, still appellant was not harmed by the court's ruling, for it appears by the evidence adduced at the trial, in addition to proof of the foregoing averments, that the crossing was a combined crossing leading to the lands of both Jess Lowe and William Yocum, and that it was used by both of them and their families, including Yocum's son, William, who was one of the four killed in the accident, and anybody else that wished to use it. Yocum's son, along with his three companions, including appellee's decedent, were in the automobile going coon hunting on the father's farm. It thus appears that the decedent and others with him, including the son of William Yocum, who had a right to use this crossing, were engaged in a joint enterprise and to that end traveling together over the crossing. The jury might reasonably and properly infer that the parties traveling in the automobile for a common purpose over the crossing over which one of them had a right to travel were invitees, and not mere licensees or trespassers, and the complaint will be deemed to be amended to harmonize with this evidence. *Baltimore, etc., R. Co.* v. *Slaughter* (1906), 167 Ind. 330, 335, 79 N. E. 186, 7 L. R. A. (N. S.) 597, 119 Am. St. Rep. 503; *Lake Erie, etc., R. Co.* v. *Fleming* (1915), 183 Ind. 511, 109 N. E. 753. It appears by the averments of the complaint that the injury and death of appellee's decedent was the result of the negligent operation of the car by appellant's servants, and this is sufficient to make it good as against the demurrer.

The case was tried on the theory of last clear chance.

There is evidence that the crossing involved in the accident was constructed by appellant, and that it had been maintained by appellant for about 25 years; that, as stated above, it was a combined crossing leading to the lands of both Jess Lowe and William Yocum, and that it was used by both of them and their families, including Yocum's son, William, who was one of the four killed in the accident, and anybody else that wished to use it. Yocum's son, along with his three companions, including appellee's decedent, were in the automobile going coon hunting on the father's farm; that sometime before the accident the track at the crossing had been raised, and that between the boards on the inside of the rails there was a space of about 30 inches filled with gravel and cinders, and that there was a depression of about 4 inches between the boards, and that this caused automobiles to stall; that automobiles had stalled on the track because of this depression; that the automobile decedent was riding in stalled on this crossing on account of the defective condition of the crossing while decedent was going with Mr. Yocum's son onto the Yocum farm. That appellant's motorman and conductor saw the automobile here involved turn into this crossing when the interurban car was 500 feet east of the crossing, and the motorman sounded the danger signal; that a car following decedent's car started around decedent's car as he turned into this crossing, but was headed off by the car in which decedent was riding, and stopped in about ten feet of the crossing with the headlights shining on the crossing, and the driver of the car following decedent heard the distress whistle when the interurban car was about 500 feet east of the crossing after he stopped and before the collision, and saw decedent's car after getting almost over the crossing ease back onto the track from which the jury might readily infer that the

engine was killed; that no other car turned into this crossing at that time. The motorman and conductor admitted that they saw a car turn into the crossing when they were 500 feet east of the crossing, and that they sounded the distress signal, and when they were from 200 to 250 feet east of the crossing they saw this automobile standing on the crossing. The track was dry and they were going up a 3 per cent grade at 35 or 50 miles per hour. Five motormen who had worked for appellant on this same line and operated this same car over this same crossing testified that this car could have been stopped in less than 200 feet with the emergency air brakes without endangering the passengers. Under this evidence the jury found for appellee.

The evidence is sufficient to sustain the verdict.

Appellant complains that instruction 2 of the court's instructions is erroneous for the reason, as appellant says, that it authorizes a recovery for appellee even though the decedent was aware of his peril and able to extricate himself therefrom. This instruction informed the jury that though the decedent was guilty of some negligence that contributed approximately to his injury by reason of his going or being on appellant's track and was in a perilous position resulting from such negligence, yet if such peril was known to the motorman operating the car that collided with the automobile in time to clearly afford him an opportunity to avoid injuring the decedent, then it became the duty of such motorman to use reasonable and ordinary care to avoid such injury, and that under such circumstances neither the concurrence nor the continuance of decedent's negligence alone is a defense when the motorman had a last clear chance to avoid the injury by exercising due diligence after discovering and realizing the peril, and that the contributory negligence

of the decedent would not bar a recovery. It is to be observed that the condition set forth in this instruction upon which appellee would have a right of recovery was that the motorman should have a last clear chance to avoid the injury. This instruction seems to be in harmony with the holding of the court in *Terre Haute, etc., R. Co.* v. *Stevenson* (1920), 189 Ind. 100, 105, 123 N. E. 785, 786, where it was held that "when a traveler is in a perilous situation resulting from his own negligence, and the peril is known to the motorman in time to clearly afford an opportunity to avoid injuring the one in peril, his duty to use the chance arises and continues while the peril lasts, whether the negligence of the traveler continues or is concurrent, or whether the traveler becomes duly though ineffectually diligent. Neither concurrence nor continuance of the traveler's negligence is a defense when the motorman has a last clear chance to avoid the injury by due diligence after the discovery of the peril." Later in the same case it was held that "the last clear chance contemplates a peril which the motorman knowingly can avoid by due care. To hold that his failure to use due care after learning, and thus having an opportunity to avoid the injury—in other words, to hold that after having the last clear chance he is excused if the traveler's negligence continues, or concurs—is to destroy the last clear chance doctrine, and to hold that contributory negligence is a defense under such circumstances."

Thus it appears that the controlling question is as to which of the parties had the last clear chance to avoid the injury. Instruction No. 2 gives a right of recovery only when the motorman had the last chance. We hold that it is a correct statement of the law.

Instruction No. 8 is challenged by appellant. This instruction gives no right of recovery to appellee unless the jury finds that the negligence of appellant was the

sole proximate cause of the death of appellee's decedent. With this limitation, there was no reversible error in the instruction.

Appellant complains of instruction No. 9 for the reason that it informs the jury that appellant was required to exercise care in approaching the crossing as to all users of the same whether trespassers, licensees by permission, or those rightfully there on the invitation of appellant. But it clearly appears by averment in the complaint, as well as by the evidence, that under the circumstances of the case and in harmony with the Slaughter and Fleming cases, cited above, that appellee's decedent was an invitee, and as such appellant might not negligently injure him without being liable in damages therefor. The burden of instruction No. 9 is in harmony with this conclusion, and is therefore not erroneous.

There was no error in refusing to give appellant's instruction No. 12, which would have charged the jury that it was wholly immaterial whether or not appellant gave signals or warnings by whistle or otherwise of the approach of its car at a public highway which was about 1,300 feet to the east of the place of the accident. While there is an averment to this effect in the complaint there was no proof of such omission, and therefore the instruction was properly refused.

Instructions Nos. 30, 32 and 35 tendered by appellant were upon the theory that appellee's decedent was at most a mere licensee. These instructions would, in effect, have told the jury that under the evidence the decedent was at most but a licensee and not an invitee, thus taking that question from the jury. The instructions were properly refused.

Instruction No. 43, tendered by appellant, would have informed the jury that where a conductor or motorman

sees an automobile upon a crossing he has a right to assume, in the absence of notice to the contrary, that the automobile will not remain upon the crossing until it is struck by an approaching car, and that such conductor or motorman, seeing an automobile upon the track, may assume that it will not remain upon the crossing. As we understand this instruction it would have been a correct expression of the law on a question of negligence or contributory negligence, but under the theory of last clear chance, being the theory upon which this case was tried, the instruction was properly refused. We find no reversible error.

Judgment affirmed.